IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ROBERT A. WILCOX, | ) | CASE NO. 13-70516 |
| | ) | |
| Debtor. | ) | |

_____

## MEMORANDUM DECISION

This case is before the Court upon a Motion for Dismissal filed on July 15, 2013 by Matthew Wynn, a purported judgment creditor of the Debtor, pursuant to section 707(b)(3)(A) of the Bankruptcy Code, on the basis that the Debtor is chargeable with bad faith. According to paragraph no. 7 of the Motion, this bad faith consists of the filing of this bankruptcy case "for the sole purpose of escaping . . . Wynn's $25,000 Judgment against the Debtor." This Motion was noticed for a hearing on August 21, 2013 and on that date Mr. Wynn and counsel for the Debtor appeared. Mr. Wynn testified that Mr. Wilcox had "threatened" him with a bankruptcy filing if he was unwilling to accept a much smaller settlement offer to resolve the claim, that as a result of this threat he agreed to accept Mr. Wilcox's settlement offer, that the latter didn't pay the agreed settlement, that when payment wasn't forthcoming, he went ahead and took a default judgment against Mr. Wilcox in state court in the amount of $25,000, and that promptly after such judgment was awarded, the latter filed the bankruptcy case in an attempt to "evade" that judgment. Mr. Wynn testified that proof of his contentions was provided by his recordings of telephone conversations with Mr. Wilcox. After sustaining the objection by Debtor's counsel, Frederick W. Harman, Esq., on the ground of hearsay to a recorded phone conversation the creditor had with the Debtor's father, the Court agreed, without objection, to permit Mr. Wynn to provide to the Court and Mr. Harman copies of two phone conversations

between himself and Mr. Wilcox upon which he relies to support his Motion.  During cross-examination by Mr. Harman, Mr. Wynn admitted that he had taken judgment against Mr. Wilcox not for the reduced settlement amount but the entire debt claimed to be actually due.  Although that was the evidence presented to the Court at the August 21 hearing, a pleading filed by the Debtor in response to an adversary proceeding complaint objecting to his discharge which was also initiated by Mr. Wynn would seem to indicate that in fact the latter did not take a default judgment against the former in the amount of $25,000 which was then followed by a bankruptcy filing, but that instead the civil case was still pending when the bankruptcy petition was filed on March 29, 2013 and that the civil warrant was dismissed without prejudice on April 1, 2013 due to the bankruptcy filing.[1]

        Since the hearing Mr. Wynn has provided to the Court recordings of the two conversations between himself and Mr. Wilcox which he referenced at the August 21 hearing and the Court has listened to them.  The first of these is indicated to have taken place on January 30, 2013 in which the parties engaged in settlement negotiations with respect to Mr. Wynn's claim against Mr. Wilcox.  Mr. Wynn asserted that he was actually due $47,000 but that he had sued for $25,000 because that was the jurisdictional limit of the General District Court.  Mr. Wynn offered to settle for $3,000 but Mr. Wilcox said that $1,700 was all that he could afford to pay and the former said that he would think about the offer and would call the latter back.  Mr. Wilcox did say that if Mr. Wynn refused to accept the offer, he would file bankruptcy and Mr. Wynn would received nothing.  The second conversation is indicated to have occurred on

---

[1] See Exhibit A to the Debtor's Answer to Objection to Discharge filed in this Court on August 29, 2013 in Adv. Proceeding No. 13-07034, docket entry #13.

February 2, 2013. During this call the parties reached a settlement agreement for the previously discussed sum of $1,700, to be funded by means of Mr. Wilcox's expected tax refunds for the 2012 tax year and it was agreed that Mr. Wynn would prepare a written agreement setting forth their bargain. Mr. Wilcox refused to go any higher than $1,700 because he said that would leave him with a few hundred dollars extra which he needed to pay some outstanding bills. The agreement was to specify that the agreed sum would be paid by March 1, 2013 because Mr. Wilcox expected to receive his tax refunds earlier than that date. It is clear from the conversation that both parties recognized that Mr. Wilcox could not pay the agreed settlement except out of the expected tax refunds and Mr. Wynn stated that he did not want to dismiss the civil warrant until he had the money in hand.

    The testimony offered at the hearing did not indicate whether Mr. Wilcox received the tax refunds prior to filing his bankruptcy petition, and if so, the total amount that he received. Neither did the evidence disclose whether in fact a written settlement agreement was ever prepared, and if so, signed. Mr. Wilcox did not appear at the August 21st hearing and there is no indication that he was subpoenaed to appear, but his counsel did appear on his behalf. Mr. Wynn's testimony at that hearing was to the effect that he had taken a default judgment in the amount of $25,000 against the Debtor, but he did not say anything about what discussions, if any, between himself and Mr. Wilcox took place after the February 2nd phone conversation or shed any light on what had happened with respect to the expected tax refunds. As the Debtor did not testify, the Court is left to speculate about the timing and amount of the anticipated tax refunds and why the agreed settlement was not effectuated.

    The Debtor's schedules filed in this case indicate that Mr. Wilcox owns no real

property, that he owns personal property valued at a total of $3,143, substantially all of which is claimed as exempt on Schedule C, and has no secured creditors, no priority creditors, and four general unsecured creditors: AT&T Mobility in the amount of $721.28, First Sentinel Bank for a deficiency balance in the amount of $1,374, Matthew Wynn in the amount of $25,000 for a debt involving a lease agreement, and Verizon Wireless in the amount of $140. In the petition the Debtor represents that his debts are primarily consumer debts. Included in both Schedules B and C are entries of $1.00 each for anticipated 2013 Federal and Virginia tax refunds and claiming exemptions in them. The Statement of Financial Affairs represents that on March 19, 2013 the Debtor paid $35 to Cricket Debt Counseling and $1,200 to Frederick W. Harman, P.C., Debtor's bankruptcy counsel. The latter amount is confirmed in the Rule 2016(b) disclosure filed by counsel. On Schedule I the Debtor represents that he is employed as an equipment operator at the Tazewell County Landfill with a gross monthly income of $832, a net monthly income of $688.70, and receives food stamps having a value of $154 per month. He further represents that he has a seven year old daughter who is dependent on him. Schedule J sets forth monthly household expenses of $1,197.63 per month, which leaves him with a deficit of expenses over income of $354.93. Mr. Wynn has not taken issue with any of the information contained in these schedules.

The information contained in the filing documentation would seem to suggest, but certainly not definitively establish, that Mr. Wilcox received at least some of his expected tax refunds on or before March 19. Even if the Court were to make that inference though, it still would be left to wonder as to exactly how much tax refund money Mr. Wilcox actually received and whether that total was sufficient for him to have paid the agreed $1,700 settlement and still

left him with money to have paid on some of his outstanding bills.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. Determination of a motion to dismiss a particular bankruptcy case and thereby deny a Chapter 7 discharge to a debtor is a "core" bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) and (O). The Court further concludes that it has the constitutional authority to adjudicate the Motion.

As this Court recently noted in its decision in the case of *In re Riggs*, Case No. 12-71761, 2013 WL 3766914 at *3 n.40 (Bankr. W.D. Va. July 9, 2013), the proponent of a motion to dismiss under § 707(b)(3) bears the burden of proving that a bankruptcy filing is abusive (citing *In re Hardigan*, 490 B.R. 437, 447 (Bankr. S.D. Ga. 2013)). Even though some of the evidence does suggest that the Debtor may have filed his bankruptcy petition when he could have resolved the major debt claim against him for a much smaller sum than the creditor claimed to be due and for an amount which he expressly agreed to pay, the Court concludes that the evidence offered by Mr. Wynn is inadequate to meet his obligation of proof. It may be that Mr. Wilcox received his tax refunds at about the time he expected and in the amounts that he anticipated and simply changed his mind about the debt settlement compromise he had reached with his major creditor, but the evidence certainly does not establish that. It also may be that the total tax refunds received were less than he expected and perhaps even less than the $1,700 amount that he had agreed to pay Mr. Wynn, leaving him without the financial ability to fulfill

the settlement. It could also be that the refunds in whatever amount had not been received when expected and that the Debtor was facing the prospect of a $25,000 default judgment against him obtained by a creditor who was unwilling to wait longer for receipt of the promised payment. The point is that the Court is left to wonder exactly when and why the settlement agreement reached over the telephone on February 2nd was never effected. A debtor's "bad faith" must be proven because it most definitely is not presumed when a creditor seeks dismissal of a case pursuant to § 707(b)(3)(A). Based on the financial information contained in the Debtor's schedules, which have not been either asserted, or shown, to be erroneous, the Debtor had no significant non-exempt property which he could have used to pay Mr. Wynn and certainly his meager income (sightly over $13,000 in the preceding year) was not enough, based on his indicated household living expenses, to support himself and his seven year old daughter, much less pay the creditor claims against him. Accordingly, on strictly financial terms the Debtor was clearly a candidate for bankruptcy relief and the evidence offered in support of the motion to dismiss was simply insufficient to demonstrate that he made his decision to file in "bad faith." Therefore, by a separate order the Court will deny the Motion for Dismissal filed by Mr. Wynn.[2]

This 9th day of September, 2013.

*/s/ William F. Stone, Jr.*
_____
UNITED STATES BANKRUPTCY JUDGE

---

[2] This leaves for later determination the adversary proceeding which Mr. Wynn has filed in this case against the Debtor.

6